IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT REYES,                :
    Plaintiff,           :    1:14-cv-1066
                             :
v.                           :    Hon. John E. Jones III
                             :
A. JORDAN, *et al.*,         :
    Defendants.          :

## **MEMORANDUM**

### **September 23, 2015**

Plaintiff, Robert Reyes ("Reyes"), an inmate who, at all times relevant, was confined at the United States Penitentiary at Lewisburg ("USP-Lewisburg), Pennsylvania, commenced this *Bivens*[1] action on June 3, 2014, against Defendants J.E. Thomas ("Thomas"), Warden, Disciplinary Hearing Officer ("DHO") Angelo Jordan ("Jordan"), and Correctional Officers Megan Houser ("Houser"), Kyle Steese ("Steese"), and Randall Weaver ("Weaver").[2] (Doc. 1). Reyes alleges "cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and denial of due process in connection with DHO proceedings in violation of the Fifth Amendment to the U.S. Constitution." (*Id.* at p.1).

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

[2] Steese is erroneously identified as "Mr. Stevee" in the complaint. (Doc. 1, p. 1).

Ripe for disposition is Defendants' motion (Doc. 15) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the motion to dismiss will be granted.[3]

## I. STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)). A district court ruling on a motion to dismiss generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*,

---

[3]The motion to dismiss is dispositive of the case. Consequently, the summary judgment motion will not be addressed.

556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

## II. ALLEGATIONS OF THE COMPLAINT

Reyes alleges that on June 2, 2013, he and his cellmate were in a "recreation cage" when Defendant Weaver attempted to place inmates Manriquez and Medina in the same cage. (Doc. 1, ¶ 7). Allegedly, Manriquez and Medina informed Defendant Weaver that "they were not good to go in cage due to security concerns and seperation [sic] orders." (*Id.*) Weaver allegedly contacted Houser and Steese to inquire whether there were any security concerns related to the inmates. (*Id.*)

Reyes alleges that "Ms. Houser and Mr. Stevee [sic] knowingly and intentionally falsely verified that inmates were compatible and that there is no security concerns" and that "Weaver knowingly and intentionally forced inmate Manriquez and Medina inside the rec. cage, despite the fact that Defendant R. Weaver has prior knowledge that inmate Manriquez and Medina are well know [sic] for attacking other inmates." (*Id.*) "Shortly thereafter, staff brought another inmate Rivera Espinosa-Rodriguez . . . and was forced inside the cage which was a staged assault by the Defendant Stevee [sic] and Houser." (*Id.* at 8).

On June 25, 2013, Reyes was charged with fighting with another person and refusing an order. (*Id.* at 10). He alleges that "the Defendants conspiratorially, [in violation of his Eighth Amendment rights], planned the assault to retaliate against Manriquez and Medina [for acting as jailhouse lawyers and challenging the conditions of their confinement] which unjustifiably caused the violation for fighting." (*Id.* at p. 1, ¶ 9). He alleges that Defendant Jordan denied him witnesses, refused to review the SMU separation roster, and failed to consider his defense in violation of the Fifth Amendment. (*Id.* at p. 1, ¶¶ 11-14). Ultimately, Defendant Jordan found him guilty of the charges and sentenced him to thirty days of disciplinary segregation, twenty-seven days loss of good conduct time, and forty days loss of privileges. (*Id.* at ¶ 15). He appealed Defendant Jordan's findings and

the appeal was granted.  (*Id.* at ¶ 16).

With regard to the exhaustion of administrative remedies, he alleges that "[p]ursuant to prison procedure, [he] filed an administrative appeal pointing out the fact that staff knowingly and intentionally unjustifiably caused the violation and the appeal was granted.  Appeal No. 747227-R1."  (*Id.*)  He seeks declaratory relief and compensatory and punitive damages. (*Id.* at p. 8).

## III.  DISCUSSION

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Specifically, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory.  *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894–95 (S.D.N.Y. 1998)).  Whether an inmate

5

has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d. 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Woodford v. Ngo*, 548 U.S. 81, 90–92 (2006). It requires compliance with the prison's "deadlines and other critical procedural rules." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211–212 (2007). "[F]ailure to satisfy the procedural rules of the [BOP's] administrative process constitutes a procedural default." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760–761 (1996) *(citing Francis v. Rison*, 894 F.2d 353,355 & n. 2 (9th Cir. 1990); *Sanchez v. Miller*, 792 F.2d 694, 697 (7th Cir.1986)).

The primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit,

reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Requiring compliance with the procedural requirements of the administrative remedy process promotes each of these goals. *Id.*

Defendants seek dismissal of the complaint on the ground that Reyes failed to comply with the exhaustion requirement with regard to the alleged violations of his constitutional rights. The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10, *et seq*. An inmate must initially attempt to informally resolve the issue with institutional staff and staff must attempt to resolve the matter. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a request to the warden within 20 days of the date on which the basis for the request occurred and the warden must then respond within 20 calendar days. 28 C.F.R. §§ 542.14, 18. An inmate who is dissatisfied with the warden's response may submit an appeal to the Regional Director of the BOP within 20 days of the date the warden signed the response. 28 C.F.R. § 542.15(a). The inmate may then appeal to the BOP's Central Office/General Counsel within 30 days of the day the

7

Regional Director signed the response. *Id.* Appeal to the General Counsel is the final administrative appeal. *Id.*

An Appeal of a Disciplinary Hearing Officer's (DHO) decision is excepted from the three tier level of review. Specifically, DHO appeals do not commence at the institution level; they are submitted directly to the Regional Director. 28 C.F.R. § 542.14(d)(2).

Defendants concede that Reyes exhausted his administrative remedies with regard to the DHO hearing. They argue, however, that this is insufficient in that the BOP exhaustion process required for appeals of DHO decisions is distinct from the exhaustion process required for civil rights actions seeking monetary damages. (Doc. 27, p. 14, citing 28 C.F.R. § 542.10, *et seq.*). The Court agrees.

The purpose of a DHO appeal is to challenge the procedures employed at the hearing level and determine whether the evidence supports the DHO's conclusions. A successful DHO appeal may result in remand back to the DHO for further proceedings, expungement of the incident report, or nullification of sanctions such as disciplinary segregation, the loss of good conduct time, and lost privileges. In his August 21, 2013 appeal to the regional director, Reyes stated as follows:

> I am appealing Incident # 2460657. On 6-25-13 staff placed [me] in rec with Michael Luna #36954-280. We were placed in a cage that was unoccupied then staff proceeded to place inmates in our cage that we have a documented separtee [sic] with. When placing separtee [sic]

> inmates in rec cage with us, we specificaly [sic] informed state that we were not to come into contact with each other. Staff still placed us together after the fact that they called back to the block for verification. As stated in DHO report, the first two inmates came into the cage and we shook hands to avoid problems. Then the third inmate came in attacking, and I did what anybody in their right mind would do, I defended myself. Staff clearly put us in that situation purposely. If it were a mistake as they claim in DHO report, they would never placed us with separtee [sic] inmates once they called for verification. Video clearly shows Rodriguez charging and attacking me. Since it was staff error and staff placed our life in danger, I pray the Region will expunged [sic] this incident report.

(Doc. 28-1, p. 42). The regional director found that "[a] thorough review of the disciplinary record revealed questions concerning the disciplinary process. Based on this review, it was determined this disciplinary action and the sanctions imposed will be expunged from your disciplinary record. Accordingly, your appeal is granted."

Clearly, his request for relief in the DHO appeal of August 21, 2013, was limited to expungement of the incident report and he received the very relief he requested. Equally clear is that the regional director's review of the appeal was limited to the review of the procedures employed, and the evidence relied upon, by the DHO. There is no indication or notice that Reyes was seeking relief beyond the disciplinary proceeding. The issues raised in the complaint are well beyond the scope of the issues presented to the regional director in the context of the DHO appeal. As noted *supra*, administrative review of an issue that relates to any aspect

of a federal inmates confinement, other than a DHO appeal, must commence at the institutional level. 28 C.F.R. § 542.13. Requiring compliance with the procedural requirements of the administrative remedy process allows a prison to address complaints about the program it administers before being subjected to suit. Further, it promotes the reduction of litigation to the extent complaints are satisfactorily resolved and improves litigation through the preparation of a useful record. *See Jones*, 549 U.S. at 219. Reyes failed to properly exhaust administrative remedies with regard to the multitude of issues raised in the complaint.

In an effort to excuse the exhaustion requirement, Reyes declares that his ability to exhaust was obstructed in that the security officers refused him a grievance. (Doc. 36, p. 15, ¶ 6). The declaration, which contains unsupported and conclusory assertions that prison officials obstructed his attempts to file a grievance, was submitted in opposition to the motion to dismiss and is not part of the complaint. In ruling on the motion to dismiss, the court is limited to the contents of the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (finding that a district court ruling on a motion to dismiss, generally "relies on the complaint, attached exhibits, and matters of public record."); *see also Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d

Cir. 1992); *Fagin v. Gilmartin*, 432 F.3d 276, 286 (3d Cir.2005). Hence, the declaration relied upon by Reyes is irrelevant to our review. *See Ball v. SCI Muncy*, 385 F. App'x 211, 214 (3d Cir. 2010). Because Reyes has failed to comply with the administrative remedy process, his complaint is subject to dismissal.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion (Doc. 15) to dismiss will be granted.

A separate order will enter.